No. 41,983

JOANN GOODMAN, *Appellant,* v. JACK D. GOODMAN, *Appellee.*

(360 P. 2d 877)

Opinion filed April 8, 1961.

*Richard C. McGrath,* of Great Bend, argued the cause, and *John Henry Lewis,* of Hoisington, was with him on the briefs for the appellant.

*Boyce P. Hardman,* of Great Bend, argued the cause, and *Herbert Diets,* of Great Bend, was with him on the briefs for the appellee.

The opinion of the court was delivered by

ROBB, J.: An action for separate maintenance was commenced by plaintiff in the trial court pursuant to G. S. 1949, 60-1516. Defendant answered and cross-petitioned for divorce. By reason of a stipulation between the parties, plaintiff, during the trial, amended her petition to seek a divorce and defendant withdrew his cross-petition. At the close of the trial, plaintiff was granted a divorce, permanent alimony of $5,000, $150.00 a month child support, and custody of the minor child except that defendant was to have custody of the child for two weeks during the summer months and three days at Christmas time but not Christmas day. In addition, defendant was given visitation privileges at reasonable times while plaintiff had custody. A division of the property was also decreed by the trial court.

Plaintiff perfected her appeal from that part of the trial court's judgment which decreed her alimony in the sum of $5,000 payable at the rate of $100.00 a month until paid in full, and from the child support order of $150.00. Three questions are here for decision. Did the trial court err in fixing the amount of alimony, in awarding

the amount of child support, and in denying plaintiff's motion for new trial?

The parties were married on October 11, 1947. Their son was born in 1949, and in 1951 they moved to Great Bend where defendant became general manager of the Central Kansas Electric Cooperative, Incorporated, from which position for the years 1958 and 1959 he received an annual salary of $15,050.00, an automobile, and an expense account.

Briefly, according to defendant's evidence, trouble started between the couple in 1951. In 1954 they separated but four months later in 1955, they bought and furnished a home and began a reconciliation. Relations were reasonably amicable until the latter part of 1956 or the first part of 1957 when plaintiff reverted to an earlier habit of intemperate drinking and the use of ridiculing language toward defendant and his family, to which he had objected before the 1954 separation. In addition, she accused him of infidelity, swore at him, and called him bad names which caused him to slap her on one occasion.

On the other hand, plaintiff's evidence, consisting of her own testimony, that of her brother, and of a George W. Robinson, showed that during 1959 defendant had been guilty of infidelity with another woman; that plaintiff had requested defendant to discontinue the affair because it was wrecking their home but this had availed plaintiff nothing.

After the trial court entered its judgment, as above stated, plaintiff filed a motion for new trial which included complaint of the property settlement. On February 3, 1960, when overruling the motion for new trial, the trial court made the following statements and they became a part of the record:

"Mr. McGrath, the court will take exception to your conclusion that there was an equal division of property. As to the household goods, when that determination was made to pass those to the plaintiff, the court made a determination as to the minimum value of those goods which the court thinks was a conservative value. Additionally, you will remember, as Mr. Hardman stated, all of that long schedule of indebtedness, with the exception of the mortgage on the home, the court ordered the defendant to pay. It is not an equal division of property, it is a division of property that is unequal, in favor of the plaintiff in the action. As Mr. Hardman has indicated, the amount of child support is considerably a higher amount than is ordinarily set in this district, at least, and I am sure, in this general area, for the support of one child. The court

considered that a liberal provision. The court considered the property settlement and alimony a fair provision, not liberal or unliberal, just a fair provision.

. . . . . . . . . . .

"The record may show that in this case the court gave some credence, considerable credence, to what the court believes is a proper consideration, namely, that the plaintiff is an educated woman. She is qualified for journalistic employment. She apparently has some interest in becoming a lawyer, how much interest the court could not be sure about. If there is a genuine interest, she is able on the alimony specified by the court, to complete her legal education and have some money during the beginning of employment. The court assumes that the financial straits faced by an attorney now are considerably less severe than they were when some of us started the practice of law.

"The court would almost think from your argument, Mr. McGrath, that it is founded upon the premise that it is the sole duty of the defendant to support the child and that it is the sole duty of the defendant to support the plaintiff.

"The court feels that in making the orders, all circumstances were considered. The court is going to mention one circumstance that was given some consideration and it hasn't been mentioned by the court up to this time.

"The court had the opportunity to observe the demeanor and attitude of the plaintiff in the action. There was testimony introduced in this case, and there was some indication along the line when the plaintiff herself was on the stand, tending toward the proposition that the plaintiff was an uncooperative person as far as the defendant was concerned, and had been for quite a number of years. From the attitude of the plaintiff in court, the court felt that certainly the plaintiff had an uncooperative attitude toward the mutual problems that the parties faced in this divorce action and relative to the child. That lent some credence to the proposition that the breaking of this home was years in the making."

Defendant first questions plaintiff's right to be heard on this appeal because after she and defendant had agreed on the date he was to have custody of their son for two weeks during the summer of 1960—from August 17 to August 31—the plaintiff on August 16, 1960, according to a letter received by her attorney on the morning of August 17, 1960, took their son by plane to New York City. Defendant contends plaintiff was thereby guilty of contemptuous violation of that court's order from which she is now appealing. The authorities cited by defendant do not appear to support his contention because they are either distinguishable from this case, or the issues therein are not the same as the issue presently before us. We shall, therefore, go directly to the questions involved in plaintiff's appeal.

Did the trial court abuse its discretion in determining the amount of alimony? First, we must examine the pertinent portions of G. S. 1949, 60-1511, having to do with allowance of alimony:

"When a divorce shall be granted by reason of the fault or aggression of the husband, the wife . . . shall be allowed such alimony as the court shall think reasonable, having due regard to the property which came to him by marriage and the value of his real and personal estate at the time of said divorce; which alimony may be allowed to her . . . by decreeing to her such sum of money, payable either in gross or in installments, as the court may deem just and equitable. . . ."

In an early *per curiam* opinion of this court (*Packard v. Packard*, 34 Kan. 53, 56, 7 Pac. 628) where the cause was being remanded for new trial as to alimony and child support because they were held wholly inadequate by this court and the trial court would therefore have to determine the amounts thereof again, a cardinal rule of this jurisdiction was prescribed:

"As the divorce to the wife was granted by reason of the fault and aggression of the husband, the wife should be allowed such alimony as would maintain her and her children in as good a condition as if she were still living with her husband." (p. 56.)

The foregoing rule from the Packard case was repeated in *Deeds v. Deeds*, 108 Kan. 770, 773, 196 Pac. 1109, where other facets of the rule as they had been developed in opinions written between the Packard and Deeds cases were also quoted and discussed. Summarized, pertinent statements therefrom are: Awarding of alimony and adjusting of financial matters between divorced persons are within the discretion of the trial court; no fixed standard controls the determination of permanent alimony but rather, it rests in the sound discretion of the trial court, is judicial in character, and therefore is not liable to appellate review except where it is evident there has been a clear case of abuse of discretion; as that term is ordinarily used, it implies not merely an error in judgment, but perversity of will, passion, or moral delinquency when such abuse is exercised to an end or purpose not justified by, and clearly against, reason and evidence. (p. 774.) See, also, the more recent cases of *Krueger v. Krueger*, 174 Kan. 249, 251, 252, 255 P. 2d 621; *Mathey v. Mathey*, 175 Kan. 446, 452, 264 P. 2d 1058; *Grimes v. Grimes*, 179 Kan. 340, 344, 295 P. 2d 646; *Nichols v. Nichols*, 186 Kan. 295, 298, 349 P. 2d 929.

Plaintiff places much emphasis on *Flautt v. Flautt*, 126 Kan. 21, 24, 266 Pac. 746, and *Mann v. Mann*, 136 Kan. 331, 333, 334, 15 P. 2d 478, in both of which are set out the general rules as to the trial court's discretion regarding alimony. While these two cases are somewhat similar to each other and to the former decisions we

have discussed and while it is true they throw some light on the only question we have to answer, each contains distinguishing facts and circumstances. We, as an appellate court are ever mindful of the well-established rule that each case must stand on its own facts and nothing in this record compels us to depart therefrom.

In view of the trial court's statements at the time it ruled on the motion for new trial, and the abundance of evidence both favorable and unfavorable to each party, we are constrained to say that the trial court judicially exercised its discretion in making the alimony allowance and, therefore, its judgment will not be disturbed on appeal.

Was the child support award sufficient? Considering previous statements made herein, we think plaintiff failed to establish a clear abuse of judicial discretion; it appears to us the allowance of child support by the trial court was a proper exercise of judicial discretion and that order will not be disturbed. Another compelling reason for not disturbing the child support order is that the trial court, of course, retains jurisdiction thereof and may at any time modify the order to take care of any future changed conditions affecting the best interests and welfare of the child. (*Krueger v. Krueger,* supra; *Duffy v. Duffy,* 176 Kan. 112, 115, 268 P. 2d 931.)

Here again the appealing party sought to have this court consider highly conflicting evidence and reach findings of fact different from those of the trial court. This we are not permitted to do. (*Bunger v. Bunger,* 187 Kan. 642, 359 P. 2d 1113.)

The last question involving the trial court's overruling of plaintiff's motion for new trial has been sufficiently answered heretofore as being proper, and no further discussion is necessary on that point.

The judgment is affirmed.